# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES EARL CAVE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 C 5605 |
| v. | ) | |
| | ) | Magistrate Judge |
| **MICHAEL J. ASTRUE**, | ) | Martin Ashman |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Earl Cave ("Plaintiff") seeks judicial review of a final decision of

Defendant, Michael J. Astrue, the Commissioner of Social Security ("Commissioner"), denying

Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security

Income benefits ("SSI") under Title II of the Social Security Act.  Before the Court is Plaintiff's

motion for summary judgment.  The parties have consented to have this Court conduct any and

all proceedings in this case, including entry of final judgment.  28 U.S.C. § 636(e);

N.D. Ill. R. 73.1(c).  For the reasons stated below, Plaintiff's motion is denied.


## I.  Legal Standard

In order to qualify for DIB, a claimant must demonstrate that he is disabled.  An

individual is considered to be disabled when he is unable to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A claim of disability is determined under a five-step analysis. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. First, the SSA considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(4)(I). Second, the SSA examines if the physical or mental impairment is severe, medically determinable, and meets the durational requirement. 20 C.F.R. § 404.1520(4)(ii). Third, the SSA compares the impairment to a list of impairments that are considered conclusively disabling. 20 C.F.R. § 404.1520(4)(iii). If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation proceeds to step four. *Id.* Fourth, the SSA assesses the applicant's RFC and ability to engage in past relevant work. 20 C.F.R. § 404.1520(4)(iv). In the final step, the SSA assesses whether the claimant can engage in other work in light of his RFC, age, education and work experience. 20 C.F.R. § 404.1520(4)(v).

Judicial review of the ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971).  The court reviews the entire record, but does not displace the ALJ's judgment by reweighing the facts or by making independent credibility determinations.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions.  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).  Thus, even if reasonable minds could differ whether the Plaintiff is disabled, courts will affirm a decision if the ALJ's decision has adequate support.  *Elder*, 529 F.3d at 413 (citing *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

## II.  <u>Background Facts</u>

Plaintiff filed for DIB and SSI on April 15, 2008, claiming that he had become disabled as of January 1, 2003.  His claims were denied initially and again upon reconsideration, after which a hearing was held on July 16, 2009 before administrative law judge ("ALJ") Robert Karmgard.  The ALJ issued a decision on August 5, 2009, finding that Plaintiff was not disabled.  The Appeals Council denied review, and the ALJ's ruling became the Commissioner's final decision.  Plaintiff then filed the instant action on September 2, 2010.

At the time of the hearing, Plaintiff was a thirty-nine year old man with a history of serious back pain.  After undergoing a spinal fusion at the L4-L5 level in 1995, Plaintiff continued to experience low back pain that radiated through both of his legs.  A laminectomy for L3, L4, and L5 was performed in December, 1999 in an attempt to alleviate these symptoms.  By February, 2000, however, Plaintiff was again experiencing pain that radiated from his lower back through the legs, although a neurological examination did not indicate significant abnormalities. (R. 275.)

Unfortunately, Plaintiff re-injured himself in September, 2001, and a series of further consultations and treatments followed. A short course of physical therapy provided some relief, but Plaintiff continued to experience shooting pains in his right thigh. (R. 314.) A follow-up CT scan and myelogram, however, showed no nerve entrapment and only mild disc bulging at the L5-S1 level. (R. 287, 314.) A functional capacity examination taken on March 12, 2002 indicated that Plaintiff could not perform his earlier work as a carpenter and restricted him to sedentary work, with an ability to lift only between ten and fifteen pounds. (R. 304.)

Beginning in June, 2004, Plaintiff experienced pain in his left knee following an injury at work, and various tests and treatments were administered in 2004 and 2005. Plaintiff's problems with back pain continued as well, and he sought emergency medical treatment for it on several occasions in 2006 and again in 2007. Plaintiff was treated throughout this period with various medications to control his pain. Notes involving attempts to refill prescriptions for the pain reliever, Vicodin, indicate that despite his obvious distress, Plaintiff was walking with relative normalcy and was not suffering weakness. Dr. Mikhail Khodarkovskiy noted that Plaintiff's pain was measured as an eight out of ten without his medication but that it was reduced to a three out of ten with it. According to Dr. Khodarkovskiy, Plaintiff range of motion in the lumbar spine was only fifty percent of a normal range, though his lower extremity strength was four out of five. (R. 463.) Following Dr. Khodarkovskiy's assessment, Plaintiff had a MRI on May 29, 2008 that showed some mild disc bulging at L2-L3 and L3-L4, together with small broad-based right paracentral disk protrusion at L5-S1. (R. 476-77.)

Plaintiff continued to seek treatment for his back pain in July, 2008, when Dr. Robert Erickson noted that he was experiencing pain radiating through his thighs and lower extremities.

(R. 248.) In October, 2008, Plaintiff underwent minimally-invasive surgery on L5-S1, with foraminotimies over the right L5 and S1 nerve roots, and a resection of a synovial cyst. (R. 250.) A follow-up exam with Dr. Erickson the next month indicated some pain with activity, which once again created a degree of radiating pain. Nevertheless, Dr. Erickson noted that the exam indicated an "excellent" neurological result. (R. 252.) The record indicates, however, that Plaintiff's pain continued, and he presented on May 19, 2009 for additional treatment for low back pain. An examination indicated lumbar tenderness with no neurological deficits. (R. 255.)

On June 11, 2008, state agency physician Dr. Sandra Bilinsky issued a residual functional capacity ("RFC") assessment concerning Plaintiff. She concluded that Plaintiff could perform light work lifting or carrying twenty pounds occasionally and ten pounds frequently, could sit, stand, and walk for six hours, and could frequently kneel, crawl, or crouch. (R. 478-85.)

### A. The Administrative Hearing

An administrative hearing was held on September 16, 2009. Plaintiff testified that in addition to over-the-counter pain relievers and medications for his nerves and blood pressure, he takes Vicodin on a daily basis to help control his pain. Plaintiff's condition had worsened in the year preceding the hearing, and he was able to walk only twenty feet before his leg began to hurt. (R. 33.) He described the pain as a combination of numbness in the right limb combined with a radiating pain that shot down through the front and back of his right leg. His ability to sit was limited to five or ten minutes. (R. 35.) Within ten to twenty minutes of sitting, his right toes become numb. (R. 39.) He is able to perform simple tasks such as occasional shopping but requires help from his wife to do so. (R. 46-47.) In order to ease his discomfort, Plaintiff is

required to use a cane while walking and to lie down for approximately three hours during a normal work day.  (R. 41, 48.)

Also present at the hearing was vocational expert ("VE") Steven Spreller.  After he testified that Plaintiff's former work as a carpenter was classified as medium to heavy, but was very heavy as actually performed by Plaintiff, the ALJ posed several hypothetical questions to the VE.  He first asked the ALJ to consider an individual with the RFC as determined by Dr. Bilinsky, with the added provision that he could only stoop, kneel, and crawl occasionally.  (R. 55.)   The VE responded that such a person could not perform Plaintiff's previous work but could undertake light, unskilled work such as a parking lot attendant, rental clerk, or security guard.  (R. 55-56.)  If the ability to lift were limited to ten pounds occasionally, sitting were restricted to six hours, and the ability to stand and walk reduced to two hours out of a work day, the VE stated that Plaintiff would not be able to perform light work.  (R. 57.)  A further reduction of Plaintiff's ability to stand and walk to only fifteen minutes continuously would limit his ability to work to the tasks of bench assembler.  (R. 57-58.)  If Plaintiff were required to use a cane occasionally in order to walk, the VE testified that the number of available jobs would be reduced by ninety percent.  (R. 59.)  Finally, were Plaintiff to be unable to sustain activities such as lifting, carrying, sitting, standing, or walking for combined total of six hours throughout a normal work day, the VE stated that no jobs would be available to him.  (R. 60.)


### B.     The ALJ's Decision

 On August 5, 2009, the ALJ issued a decision determining that Plaintiff was not disabled. Somewhat unusually, the ALJ reserved a finding at step one on whether Plaintiff had

been engaged in substantial gainful activity since his alleged onset date of January 1, 2003. He did so because some records indicated that Plaintiff received earnings in 2004 and 2005. At step two, the ALJ found that Plaintiff's severe impairments included a degenerative disease of the lumbar spine, hypertension, and gastroesophageal reflux disease. No listing requirement was met or medically equaled at step three. After considering the record and Plaintiff's testimony, the ALJ concluded that Plaintiff's RFC was limited to the ability to lift and carry up to ten pounds occasionally, though lighter work items such as small tools could be handled frequently. His ability to stand and walk was stated as a total of two hours in an eight-hour day, but no more than fifteen minutes at a time. Plaintiff could sit up to six hours a day; could not climb ladders or ropes; but could climb stairs. Plaintiff was also found to be able to stoop, kneel, crouch, or crawl only occasionally. At step four, the ALJ determined that Plaintiff could not perform his past relevant work, and at step five he found that Plaintiff could carry out jobs that existed in significant numbers in the national economy. As a result, Plaintiff was found not to be disabled. (R. 14-20.)

### III.  Discussion

Plaintiff challenges the ALJ's decision on the sole ground that the ALJ's hypothetical questions posed to the VE were erroneous. As noted above, Plaintiff stated that he could sit and walk only for limited periods and must use a cane in order to walk. The ALJ, however, did not include these limitations as part of the questions given to the VE.

The Court finds this argument, which contains no developed discussion of the issue, unpersuasive. An "ALJ is required only to incorporate into his hypotheticals those impairments

and limitations that he accepts as credible." *Schmidt*, 496 F.3d at 846; *see also Hodges v. Barnhart*, 509 F. Supp.2d 726, 736 (N.D. Ill. 2007) ("When an ALJ poses a hypothetical question to a VE, the question must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record.").  As the Seventh Circuit has stated, questions posed to a VE do not necessarily have to take into account every possible limitation a claimant alleges; they need only incorporate those limitations that are supported by the medical evidence in the record.  *See, e.g.*, *Ragsdale v. Shalala*, 53 F.3d 816, 818 (7th Cir. 1995); *Ehrhart v. Sec. of Health and Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

In this case, Plaintiff's argument overlooks that the ALJ did not find his testimony concerning the limitations he cites in his motion to be entirely credible.  Barring such a finding or other independent support in the record, the ALJ was not required to pose them to the VE.  Plaintiff, however, does not argue that the ALJ's credibility assessment was incorrect, though he does claim that the ALJ "states" but does not "find" that his testimony was not credible.  (Pltf's. Mot. at 14.)  Insofar as this enigmatic claim argues that the ALJ failed to properly discuss the reasons for his credibility assessment, Plaintiff provides no reason why the ALJ failed to meet the requirements for evaluating a claimant's credibility.

Social Security Ruling 96-7p requires an ALJ to consider seven factors when addressing a claimant's credibility:  (1) activities of daily living; (2) the duration and intensity of pain or other symptoms; (3) factors that precipitate or aggravate symptoms; (4) issues related to medication; (5) non-medication treatment the claimant has received; (6) non-treatment measures a claimant has taken to alleviate pain, such as standing or moving in certain ways; and, (7) other factors affecting an individual's functional limitations and restriction due to his symptoms.

SSR 96-7p. Courts review an ALJ's credibility decision with deference because "the ALJ is in the best position to determine the credibility of witnesses." *Craft*, 539 F.3d at 678. An ALJ's credibility determination warrants reversal only if it is so lacking in explanation or support that it is "patently wrong." *Elder*, 529 F.3d at 413-14.

Here, the ALJ's decision shows that he found discrepencies between Plaintiff's claim of disabling pain and his testimony concerning his activities of daily living. For example, Plaintiff testified that he could drive a car, shop for periods of time, and perform at least some tasks related to doing laundry. The ALJ also noted that the record does not support Plaintiff's statement that a physician prescribed the cane he stated was necessary for him to walk and that no treating physician had imposed any limits on his activities. Plaintiff does not argue that the ALJ's findings were erroneous on these issues or that the record contains any evidence that should have been considered as part of the evaluation outlined in SSR 96-7p.

The ALJ also undertook a comprehensive review of the medical record and noted that, while Plaintiff's surgeries evidenced the genuineness of his pain symptoms, the follow-up treatment notes indicated that the surgeries were relatively successful in alleviating the intensity of Plaintiff's complaints. Dr. Khodarkovskiy, for example, stated that Plaintiff's pain levels were a three out of ten when he took his medication, and Dr. Erickson stated that Plaintiff had an "excellent" neurological result following his 2008 surgery. (R. 463, 252.) In the absence of any argument on this issue, the Court finds that Plaintiff has not shown why the ALJ's credibility assessment was erroneous or why the ALJ was required on this basis to include Plaintiff's self-described limitations in the questions posed to the VE.

Although unclear, Plaintiff appears to challenge the basis for the ALJ's questions by claiming that no evidence supports the ALJ's finding that Plaintiff could stoop, kneel, crouch, and crawl no more than occasionally. This was part of the ALJ's RFC conclusions, which Plaintiff does not directly contest, and the ALJ included it as part of his first hypothetical to the VE. Contrary to Plaintiff's contention, however, the ALJ's question is supported by evidence in the record. State agency physician Dr. Bilinsky determined that Plaintiff could stoop occasionally, and kneel, crouch, and craw frequently. (R. 480.) Plaintiff does not argue that Dr. Bilinsky's evaluation was incorrect or that the ALJ erred in finding that her assessment should be given "some weight." (R. 18.) An ALJ is entitled to rely on the reports of state agency physicians who are skilled in social security disability evaluations. *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1527(f)(2)(I) (stating that state agency medical consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation.").

Plaintiff overlooks that Dr. Bilinsky's findings support the ALJ's RFC determinations. Although the ALJ could have clarified the basis for his RFC finding more clearly than he did, Plaintiff does not claim that he was harmed by an RFC assessment that was more restrictive than the state agency physician's own finding or show why the ALJ's hypothetical question should not have included the terms of his RFC evaluation. *See Crawford v. Astrue*, 633 F. Supp.2d 618, 638 n.10 (N.D. Ill. 2009). Instead, Plaintiff only claims that no evidence supports the ALJ's finding. Accordingly, Plaintiff has shown no reason why the VE was required to include Plaintiff's subjective complaints as part of his questions to the VE or why the ALJ's own RFC determination was erroneous.

## IV.  Conclusion

For the aforementioned reasons, the Court affirms the Commissioner's final decision and

denies Plaintiff's Motion for Summary Judgment

**ENTER ORDER:**


_____

**MARTIN C. ASHMAN**

**Dated:**  August 10, 2011.                    United States Magistrate Judge